# LEVINE & BLIT, PLLC
*Attorneys at Law*

EMPIRE STATE BUILDING
350 FIFTH AVENUE, 36TH FLOOR
NEW YORK, NEW YORK 10118
PHONE: (212) 967-3000 · FAX: (212) 967-3010
www.levineblit.com

April 27, 2017

**VIA ECF**
United States District Court
Honorable Richard J. Sullivan
40 Foley Square
New York, NY 10007

   Re: *Kenon v. Blink Holdings, Inc., et al.* – No. 16-cv-7869
      Joint Letter Motion for Settlement Approval

Dear Judge Sullivan,

  Plaintiff, Marci Kenon ("Plaintiff"), and defendants, Blink Holdings, Inc., Equinox Holdings, Inc., and Blink 116th Street, Inc. (collectively, "Defendants"), by and through their respective attorneys, hereby respectfully submit this Joint Letter Motion for Approval of the Settlement Agreement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and its progeny. Counsel for the Parties respectfully submit that the Agreement constitutes a fair and reasonable compromise of the Fair Labor Standards Act ("FLSA") claims in this matter, which should be approved by the Court.

Background

  Plaintiff commenced this action pursuing causes of action for unpaid minimum wages in pursuant to the Fair Labor Standards Act of 1938 ("FLSA") and the New York state analogue. Plaintiff alleged that she began working as a personal trainer for Defendants in or about November 2015. Plaintiff alleged that from early November 2015 until about early February 2016, she worked approximately fifteen (15) to twenty-five (25) hours per work week performing the following duties: engaging prospective personal training customers in the gym, staffing the gym's front desk, answering telephones, and other labor necessary for the operation of the fitness club (hereinafter referred to as "floor hours"). Plaintiff alleged that, as a condition of her employment, she was required to work floor hours. Plaintiff was paid at least the minimum wage rate set by the New York Labor Law and its regulations for floor hours worked.

  Plaintiff alleged that, in addition to their floor hours, she was expected to call prospective clients about personal training sessions, email prospective clients about personal training sessions, and follow-up with confirmed clients concerning their training sessions; such duties were expected to be performed off the clock resulting in the denial of minimum wages to

1

Plaintiff. Plaintiff further alleged that, at all times relevant to this action, she worked approximately eight (8) hours per week performing the duties described above. Plaintiff alleges this work went uncompensated.

Plaintiff alleged that she performed additional off the clock work, including, but not limited to, providing tours of the gym to prospective or new customers, answering questions from gym members, and preparing and updating individual fitness plans for customers' personal training sessions. At all times relevant to this action, Plaintiff alleged that she spent about three (3) to four (4) hours per week performing the duties identified in paragraph 38 above. Plaintiff alleges this work went uncompensated.

In addition, Plaintiff alleged that she as required to perform personal training sessions for Defendants' customers. Each personal training session is either 30 minutes or an hour long, plus any preparation or clean up time. Plaintiff received $15.00 from Defendants for each 30 minutes of personal training time provided to Defendants' customers. Plaintiff alleges preparation and clean up time went uncompensated.

Plaintiff was required to solicit Defendants' customers, by email, telephone, who may be interested in personal training sessions. As a result, it took months for Plaintiff to build a meaningful customer base for their personal training sessions. Between early November 2015 and mid January 2016, Plaintiff performed zero (0) to five (5) personal training sessions per week while she built her customer base. During this time period, Plaintiff alleges that she was deprived minimum hourly wages pursuant to the FLSA.

## Bona Fide Disputes

1. Number of Hours Worked

Plaintiff contends that the hours alleged in her First Amended Complaint accurately reflect the number of hours worked per week throughout her employment, and that, as a result of the pay practices alleged, including off-the-clock work, she was deprived of minimum wages for a period of time during her employment. Defendants contend that Plaintiff worked substantially fewer hours than alleged. Moreover, Defendants contend that Plaintiff's total compensation divided by the number of hours alleged to have worked still exceeds the minimum hourly rate mandated by the FLSA.

## Settlement Terms

Annexed hereto as "Exhibit A" is a true and accurate copy of the Settlement Agreement between the parties. A fully executed copy of the Settlement Agreement will be filed with the Court prior to the fairness hearing scheduled for May 8, 2017. In exchange for a release of Plaintiff's claims, Defendants shall pay to Plaintiff the gross sum of $9,500.00. The Parties have agreed to mutual non-disparagement and mutual general releases of claims. Notably, Plaintiff is not obligated to maintain confidentiality concerning any aspect of her claims or the settlement amount.

### Reasonableness of the Settlement Amount and Terms

Here, through counsel, the parties engaged in good faith, arm's-length settlement negotiations. The terms and conditions of the settlement reflected in the Settlement Agreement are the product of and consistent with the Parties' negotiations, and represent a reasonable compromise of the *bona fide* disputed issues regarding the claims and defenses in this case.

Given the lack of time records in support of her allegations and Defendants' denial of material allegations, continuing with litigation posed a significant risk to Plaintiff and her potential for a monetary recovery. Therefore, the parties respectfully request that this Court finds that the settlement amount and terms and conditions are fair and reasonable.

The Settlement Agreement also contains a mutual non-disparagement provision and mutual general release between the parties. Plaintiff also understands that she is forfeiting any other claims against Defendants, known or unknown, and is prepared to do so because, after consultation with undersigned counsel, Plaintiff can think of no other claims and is prepared to forfeit any such possible claims in the interest of maximizing the settlement here.

There is substantial value for both parties in knowing that further litigation will not occur arising out of past disputes in this relationship. *See Souza v. 65 St. Marks Bistro Inc.*, No. 15-cv-327 (JLC), 2015 BL 366989. at *6 (S.D.N.Y. Nov. 6, 2015). Importantly, courts have approved mutual general releases comparable to what is contained in the Settlement Agreement where, as here, the case involves an individual as opposed to class or multiple plaintiffs, plaintiff is represented by counsel, the general releases are mutual, the plaintiff has considered and explored with counsel the existence of other possible claims against defendants and decided there are no other claims, and the settlement here is maximized, in view of the defenses, so that the release by plaintiff cannot be considered unfair. *Souza*, supra, at *6-7. Likewise, mutual non-disparagement language is fair and reasonable under the circumstances as both parties have undertaken the same obligation. Therefore, the parties respectfully request that this Court finds that the settlement terms are fair and reasonable under the circumstances.

### Reasonableness of the Attorney's Fees

"To aid a court in determining the reasonableness of proposed attorney's fees, counsel must submit evidence providing a factual basis for the award." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). "A court determining the portion of a FLSA settlement reasonably allocated to attorneys' fees may use either a 'lodestar' method or a 'percentage of the fund.'" *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 U.S. Dist. LEXIS 53339, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016). When using a 'percentage of the fund' approach, "courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015). In determining a reasonable award of attorneys' fees, a court should also consider traditional criteria such as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

While, on its face, Plaintiff's claims are a garden variety FLSA action, significant risk was undertaken by Plaintiff's counsel by agreeing to accept Plaintiff's case on a contingency fee basis, given that Plaintiff did not possess time records to support her claims of number of hours allegedly worked that went uncompensated. Plaintiff was provided quality representation by knowledgeable and experienced counsel who focuses his practice on wage and hour litigation. Further demonstrating the quality of the representation, Plaintiff's counsel was able to secure a settlement of Plaintiff's claims in an amount meaningfully above that alleged in Plaintiff's First Amended Complaint, as the allegations, if proven true, demonstrated that Plaintiff was due approximately $1,000.00. Moreover, the fee requested (33 1/3%) reasonably relates to the recovery and is reasonable when applying either the lodestar method or the percentage of the fund method for determining attorney's fees. Lastly, public policy favors early resolution of claims in order to avoid unnecessary waste of the resources of the Court and the parties. Thus, the parties respectfully request that the Court approves the settlement and awards $3,166.66 to Plaintiff's counsel in attorney's fees and costs.

The attorney's fees for Plaintiff's counsel pursuant to the Settlement Agreement are equal to $3,166.66, which is 33 1/3% of the total recovery. Plaintiff's counsel incurred $625.00 in costs on Plaintiff's behalf, and Plaintiff's counsel has incurred over $7,500.00 in attorney's fees in the litigation of the instant action. Annexed hereto as "Exhibit B" is a true and accurate copy of contemporaneous time records for work expended by Plaintiff's counsel and costs incurred in this action. Throughout this action, Plaintiff has been represented by the undersigned, Justin S. Clark, Esq. The undersigned, Mr. Clark, is a fifth year associate attorney at Levine & Blit, PLLC, who focuses his practice primarily on wage and hour litigation, including class action litigation of the same. When billing clients (both plaintiffs and defendants) on an hourly basis, Mr. Clark bills at an hourly rate of $300.00.

Thank you for the Court's time and attention to this matter.

Respectfully submitted,

LEVINE & BLIT, PLLC

Justin S. Clark

4